UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

In re:

    Arthur Wilbur Dunham, III and               Case No. 08-22959
    Betsy Jane Dunham,                               Chapter 11
                                                      Hon. Daniel S. Opperman

        Debtors.
_____/

The Hanover Insurance Company,
Massachusetts Bay Insurance
Company, and Citizens Insurance
Company of America,

        Plaintiffs,

v.                                                      Adv. Pro. No. 09-02001-dob

Arthur Wilbur Dunham, III and
Betsy Jane Dunham,

        Defendants.
_____/

**Opinion Granting the**
**<u>Defendants' Motion for Summary Judgment</u>**

I. <u>Introduction</u>

        The Defendants seek summary judgment on the Plaintiffs' one count complaint to determine the non-dischargeability of a debt under 11 U.S.C. § 523(a)(4). The Court has jurisdiction to resolve the issues before it under 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1) and E. D. Mich. LR 83.50(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). For the reasons set forth in this opinion, the Court grants the Defendants' motion.

II. <u>Facts</u>

        The undisputed facts in this proceeding are as follows. Arthur Wilbur Dunham, III and

Betsy Jane Dunham (the "Defendants") are officers of Wolverine Interiors, Inc, which designed and installed cabinets and other materials for public construction projects for schools, hospitals, and labs located in Michigan and Indiana. In the course of its business, Wolverine Interiors was required to furnish performance and payment bonds ("Bonds") for some of its public construction contracts. Wolverine Interiors procured these bonds from the Hanover Insurance Company, Massachusetts Bay Insurance Company, and Citizens Insurance Company of America ("Hanover"). To obtain the bonds from Hanover, Wolverine Interiors, the Arthur W. Dunham III Revocable Living Trust, the Betsy J. Dunham Revocable Trust, and the Defendants, in their individual capacities, were required to execute an Agreement of Indemnity (the "Agreement").

The Agreement delineates the various obligations of the Defendants to Hanover including their understanding that they would personally indemnify and hold Hanover harmless for any claims that might arise from any Bonds executed by Hanover. (Plfs' Compl. Ex. A). Under the Agreement, the Debtors, as well as the other entities, are referred to as the "Indemnitors" and Hanover is designated as the "Surety." Paragraph 2 of the Agreement states:

> The Indemnitors shall exonerate, indemnify, and save harmless the Surety from and against every claim, demand, liability, cost, charge, suit, judgment and expense which the Surety may pay or incur, including, but not limited to, loss, interest, court costs and consultant and attorney fees:
>
> (a) by having executed or procured the execution of the bonds; or
>
> (b) in making an independent investigation of any claim, demand, or suit; or
>
> (c) in defending any suit, action, mediation, arbitration, or any other proceeding to obtain release from liability whether the Surety, in its sole discretion, elects to employ its own attorney or permits or requires [I]ndemnitors to defend the Surety; or
>
> (d) in enforcing any of the covenants, terms and conditions of this Agreement.

In addition, Paragraph 7 of the Agreement provides:

> The Indemnitors covenant and agree that all funds due under any contract secured by a bond, whether in the possession of any Indemnitor or others, are held in trust for the benefit and payment of all obligations incurred in the completion of said contract for which the Surety would be obligated under the bond. The trust shall inure for the benefit of the Surety for any liability or loss under any bond, and this Agreement shall constitute notice of such trust.

On October 3, 2008, the Defendants sought relief under the Bankruptcy Code by filing a Chapter 11 petition. A few weeks later, Wolverine Interiors filed a voluntary Chapter 11 petition on October 21, 2009. Both the Defendants' and Wolverine Interiors' bankruptcy cases were later converted to Chapter 7.

Hanover commenced this adversary proceeding by filing a one count complaint against the Defendants on January 6, 2009. In its complaint, Hanover alleged that it executed bonds on at least 37 public construction contracts between Wolverine Interiors and various owners (the "Bonded Projects"). It further alleged that the Agreement applied to the bonds provided by Hanover for the Bonded Projects. Hanover also alleged that a trust was created by paragraph 7 of the Agreement.

On February 5, 2009, Hanover filed a proof of claim indicating that it holds an estimated secured claim of $2,625,722.00 in "trust funds." Attached to its proof of claim are copies of the Agreement and a table chart that provides details for each of the Bonded Projects including a job number, if known, a project description, and the name of the obligee, if available. In its proof of claim, Hanover indicated that the Agreement and the table chart are the basis of its secured claim.

During their § 341 meeting of creditors, the Defendants acknowledged that Hanover provided performance and payment bonds on various public construction projects performed by Wolverine Interiors. The Defendants, however, did not admit the creation of an express trust

3

under the Agreement. The Defendants now move for summary judgment on the basis that Hanover is unable to establish the existence of an express trust under the Agreement. Hanover opposed the Defendants' motion. A hearing was held on the Defendants' motion. At the conclusion of the parties' arguments, the Court took this matter under advisement.

III. Standard for Summary Judgment

Fed. R. Civ. P. 56(c) for summary judgment is incorporated into Fed. R. Bankr. P. 7056. Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id*. at 247-48. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50 (citations omitted).

"The initial burden is on the moving party to demonstrate that an essential element of the non-moving party's case is lacking." *Kalamazoo River Study Group v. Rockwell International Corp*., 171 F.3d 1065, 1068 (6th Cir. 1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). "The burden then shifts to the non-moving party to come forward with specific facts, supported by evidence in the record, upon which a reasonable jury could return a verdict for the non-moving party." *Id*. (citing *Anderson*, 477 U.S. at 248). "The non-moving party, however, must provide more than mere allegations or denials . . . without giving any significant probative evidence to support" its position. *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir.

4

1998) (citing *Anderson*, 447 U.S. at 256). "If after reviewing the record as a whole a rational factfinder could not find for the nonmoving party, summary judgment is appropriate." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001) (internal quotation marks and citations omitted).

IV. Discussion

Section 523(a)(4) excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." The "exception for 'defalcation while acting in a fiduciary capacity' follows from Congress's desire to protect trust relationships: when the bankrupt is a trustee and the creditor a trust beneficiary, § 523(a)(4) points the needle away from discharge; it is yet another example of the law's imposition of high standards of loyalty and care on trustees." *Patel v. Shamrock Floorcovering Services, Inc.*, (*In re Patel*), 565 F.3d 963, 967 (6th Cir. 2009) (citations omitted). The Sixth Circuit Court of Appeals in *In re Bucci*, 493 F.3d 635 (6th Cir. 2007), explained the meaning of the phrase "defalcation while acting in a fiduciary capacity" by quoting from several prior decisions.

> A debt is nondischargeable as a defalcation when the preponderance of the evidence establishes: "(1) a preexisting fiduciary relationship; (2) breach of that fiduciary relationship; and (3) a resulting loss." *In re Blaszak,* 397 F.3d at 390.
>
> The Sixth Circuit "construes the term 'fiduciary capacity' found in the defalcation provision of § 523(a)(4) more narrowly than the term is used in other circumstances." *In re Blaszak*, 397 F. 3d at 391. In *Carlisle Cashway, Inc. v Johnson* (*In re Johnson*), 691 F.2d 249, 251-52 (6th Cir.1982), and *In re Interstate Agency*, 760 F.2d at 125, we limited the application of the defalcation provision to express or technical trusts and refused to extend it to constructive or implied trusts imposed by operation of law as a matter of equity. The decisions in those cases relied on the Supreme Court's holding in *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct.151, 153, 79 L.Ed. 393 (1934) that the defalcation provision applies only to express or technical trusts. Again in *In re Garver*, we adopted a narrow definition of the defalcation provision and held that it does not apply to someone who merely fails to meet an obligation under a

5

> common law fiduciary relationship. *In re Garver*, 116 F.3d at 179. . . . Accordingly, the defalcation provision applies to "only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *In re Garver,* 116 F.3d at 180.

*In re Bucci*, 493 F.3d at 639-640.

The requirements to establish an express or technical trust are to be determined under state law. *See*, *e.g.*, *Capital Indemnity Corp. v. Interstate Agency, Inc. (In re Interstate Agency, Inc.)*, 760 F.2d 121, 124 (6th Cir. 1985) (explaining that the United States Supreme Court has instructed that courts should refer to state law to determine when an express trust exists); *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law[,u]nless some federal interest requires a different result . . . ."). In this proceeding, the Court must examine Michigan law to determine whether Paragraph 7 of the Agreement created an enforceable express trust between the Debtors and Hanover.

Under Michigan law, an express trust "may be created . . . [f]or the beneficial interest of any person or persons where such trust is fully expressed and clearly defined upon the face of the instrument creating it . . . ." Mich. Comp. Laws § 555.11. "To constitute an express trust there must be an explicit declaration of trust, or circumstances which show beyond reasonable doubt that a trust was intended to be created." *Scarney v. Clarke*, 282 Mich. 56, 63, 275 N.W. 765, 767 (Mich. 1937). The creation of an express trust does not "depend on the use of a particular form of words." *Faulds v. Dillion*, 231 Mich. 509, 204 N.W. 733, 735 (1925). "It is essential that there be an explicit declaration of trust accompanied by a transfer of property to one for the benefit of another." *Osius v. Dingell*, 375 Mich. 605, 134 N.W.2d 657, 660 (Mich. 1965).

To ascertain the intent of a settlor, the Michigan Supreme Court has explained:

"Whether the transferor has manifested an intention to give property to a person

6

in trust or to give it to him for his own benefit is a question of interpretation of the transferor's language in the light of all of the circumstances.

> No trust is created if the transferor does not manifest an intention to impose enforceable duties upon the transferee . . . Even though the purpose to which he desires the transferee to apply the property is clearly something other than for the personal benefit of the transferee, no trust is created if the settlor manifested an intention to impose merely a moral obligation, and to leave the transferee free from any legal obligation to apply the property to the purpose []. His intention not to impose enforceable duties may appear from the fact that the purposes to which the property is to be applied are so broad as to show that the transferor intended that the transferee should be entitled to use the property for his own benefit."

*Townsend v. Gordon*, 308 Mich. 438, 14 N.W.2d 57, 61 (Mich. 1944) (quoting 1 *Restatement of the Laws of Trusts* § 125).

The Defendants argue that they are entitled to summary judgment as a matter of law because the Plaintiffs cannot establish a critical element under § 523(a)(4) — the existence of an express trust. The Defendants contend that the following four elements are not present in the Agreement: (1) an intent to create a trust; (2) a trust res; (3) a third party beneficiary; and (4) their status as trustees. The Defendants maintain that the Agreement was executed by them and the other entities to indemnify and reimburse Hanover for any losses it could incur as a result of Wolverine Interiors failure to perform or meet its payment obligations on any of the Bonded Projects.

Hanover disagrees with the Defendants' position and contends that the language used in Paragraph 7 of the Agreement fulfills each of the necessary elements of § 523(a)(4) as required under Sixth Circuit precedent and Michigan law.

The Court finds that the language used in Paragraph 7 of the Agreement is insufficient to create an express trust. Contrary to the Defendants' characterization, a trust res and third party

7

beneficiaries are expressly described in Paragraph 7. The trust res is defined as being "all funds due under any contract secured by a bond." Moreover, the third party beneficiaries seem certain as being any entity entitled to receive payment for work performed or materials provided on any of the Bonded Projects with Hanover being a contingent beneficiary to the extent it incurred "any liability or loss under any bond."

While these two findings may be ascertained from Paragraph 7 of the Agreement, the Court cannot conclusively determine the creation of an express trust after a review of the language used in Paragraph 7. The words "in trust" used in Paragraph 7 arguably provide some indication of the Defendants' intent to create an express trust. These words alone, however, are not absolutely determinative. *Knights of Equity Mem. Scholarships Comm. v. Univ. of Detroit*, 359 Mich. 235, 102 N.W.2d 463, 466 (Mich. 1960) (Use of the words "trust" or "trustee" are "neither necessary to the creation of a trust nor conclusive with respect thereto even if used." ). First, a careful review of Paragraph 7 reveals an attempt to extend the "trust" label to payments due but that had not yet been made or received by Wolverine Interiors on any of the Bonded Projects. Yet, the owner or general contractor of a particular public construction project would be the transferor of any funds that make up the alleged trust res. The Agreement does not contain any language to indicate the intent of such transferor of the funds to create an express trust on such funds or to impose any duties on Wolverine Interiors or the Defendants as trustees.

Second, the existence of an express trust is undermined because there is no specific requirement that the trust res is to be transferred to and specifically held by Wolverine Interiors or the Defendants. Paragraph 7 states that a trust is imposed on "all funds due" regardless of

8

whether they are "in the possession of any Indemnitor or others." This lack of possession or transfer of property to Wolverine Interiors or the Defendants is contrary to Michigan's requirement that there be an "explicit declaration of trust accompanied by a transfer of property[."] *Osius v. Dingell*, 134 N.W.2d at 660. In addition, binding Sixth Circuit precedent requires the "placement of a specific res in the hands of the debtor." *In re Garver,* 116 F.3d at 180 (citation omitted). Third, paragraph 7 does not contain any language to impose any duties upon the Defendants as trustees as required under Michigan law by *Townsend v. Gordon*. The Court therefore holds that Paragraph 7 of the Agreement is insufficient to create an express trust under Michigan law.

## V. Conclusion

For the reasons explained in this Opinion, the Court grants the Defendants' motion for summary judgment. In reaching this conclusion, the Court notes that it considered each of the arguments raised by the parties including those not specifically addressed in this opinion.

Signed on August 03, 2010 n
ed on August 03, 2010 .

                           **/s/ Daniel S. Opperman**
                           **Daniel S. Opperman**
                           **United States Bankruptcy Judge**